UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

CASE NO.: 1:17-CR-33 MW/GRJ

vs.

MAC JOHNSON,
    Defendant.
_____/

## DEFENDANT'S FURTHER STATEMENT
## IN SUPPORT OF SENTENCING VARIANCE

The Defendant, MAC JOHNSON, hereby files with the Court his argument in support of a sentencing variance. Evidence in support of the argument stated herein will be produced to the Court at the March 25, 2019 Sentencing Hearing. This filing is made to advise the Court of the arguments to be advanced at the Sentencing Hearing, albeit no such notice is required under Rule 32(h) of the Federal Rules of Procedure. See, *Irizarry v. United States,* 128 S Ct 2198 (2008).

The case coming before the Court is unique in that the Defendant has, during the term of his pre-trial release, fully satisfied his agreed-upon restitution as calculated by the IRS Special Agent (Wisnaskas). That extraordinary accomplishment was completed in a year despite the fact that the day after Mac Johnson entered his plea, nearly every supplier and creditor not only put Mac's businesses into a cash only status but asserted more than seven hundred thousand

dollars in liens on approximately 53 affected properties which Mac had to satisfy at the same time he was completing his restitution. The effect of that complicating factor meant that the total payments attributable to his plea exceed two million dollars. By any measure the efforts of the Defendant to reestablish the public's trust and meet his obligations to this Court have been both extraordinary and rare in the history of this Court.

It should be recalled that the amounts set for both the Defendant's IRS obligations and the amounts owed to the State for underpayment of workers compensation coverage were accepted without contest by the Defendant. Admittedly the final restitution payments totaling $1,188,026.44 represent a substantially lower amount than the amounts calculated as loss levels by the Government for scoring the Defendant's offences. That difference is easily explained.

First, the designated workers compensation carriers all accepted approximately sixty percent of the stated loss because those levels were originally computed based upon the then current workers compensation schedule for individual risk rates applicable to various job titles for which payments had either been underpaid or not paid at all. Since both roofing and tree-trimming are recognized as high-risk occupations, the restitution calculations appeared to reflect the highest rates charged by insurers. However, as both the Government and the

affected carriers recognized, the retroactive payment of such amounts on behalf of workers for whom there had not been a single claim asserted during what should have been the entire coverage period meant that the restitution payment was being made albeit no risk to the carrier had ever actually existed (especially since the applicable statute of limitations for any such claim had expired before the restitution was paid). Thus the loss amount attributable to the workers compensation underpayment reflected a correct but highly inflated loss figure.

Second, the total tax loss amount asserted by the Government reflects approximately twice that which is directly attributable to Mac Johnson due to his unlawful failure to properly withhold and report the taxes avoided by those workers paid in cash. The Defendant readily accepts the entire loss as his responsibility for scoring purposes but simply reminds the Court that half of the unpaid tax loss is attributable to Mac's method of payment. No employee tax monies were retained by Mac, nor did the nonpayment of taxes by the cash recipients inure to the benefit of his companies.

As stated before, the Defendant fully accepts the total tax loss calculation figure for purposes of scoring his offenses but only points out that a large amount of that loss is not reflective of any personal gain by him or his companies.

The Defendant's efforts to regain the Government's trust is also reflected in the fact that, upon several occasions, both he and co-counsel, Mr. Silverman,

provided direct information to Homeland Security officials regarding the location of several undocumented workers. Admittedly, for whatever reason, this information has not, at least to date, been used to prosecute others who regularly employ undocumented workers. Nevertheless, that decision should not detract from the fact that the Defendant was, and is, willing to provide assistance to the Government. This Court is both too wise and too current to believe that the employment of undocumented workers in construction, agriculture, and other related industries is or ever was restricted to Mac Johnson's enterprises in Newberry, Florida.

While Mr. Johnson's decision to use such illegal employees was both ill-conceived and transparent, it was never predatory. There is no evidence that the Defendant ever paid a lesser wage or imposed more onerous conditions on the basis of whether the worker was or was not undocumented. Mac Johnson was doing business the wrong way as it related to undocumented workers but he was not doing so in an effort to exploit the workers themselves. Indeed several such persons have expressed a desire to work for Mac <u>after</u> this matter came to light.

This Court, of course, has before it a wide, but not unlimited range of options in the case. It can, as the Government will argue, sentence Mr. Johnson to prison for some prolonged period of time. But this Court, unlike its predecessors of the 1990's and early 2000's, now has the ability to actually fashion a judgment

that will punish the offender and serve as a deterrent to others, while giving credit to the extraordinary effort the Defendant has made to rectify his unlawful acts. Moreover, if the Court chooses to send Mr. Johnson away, it will effectively close down companies that have regained their effectiveness, reformed their practices, and fully reimbursed all losses sought by the Government. A home detention substitute will save seventy families from suffering a dramatic loss of support and keep a local small town economy from being greatly impacted. Such a sentence will also allow Mac to meet his obligations to finish those jobs throughout Florida which he incurred in an effort to satisfy the restitution pledge to the Court (as reflected in the Defendant's last motion for extension of time).

Mac Johnson has proven by his actions during this last year that he can and will abide by the law and still be successful. Mac's Probation Officer will tell the Court that Mac Johnson has been in complete compliance with the requirements placed upon him. Mac is a perfect example of someone for whom home detention is both a fair and proportional sentence. Moreover, if the Court is worried about recurrence, Mac Johnson is prepared to accommodate regular checks upon his tax or employment status or meet any reporting requirements placed upon him by the Court.

Whenever a person stands before this Court it is only fair that the person's life and station be given an unbiased and focused consideration. Mac Johnson's

life has been in some ways complicated, while in other ways, miraculous. By the time Mac was seven, his mother abandoned the family and moved away. She took Mac's younger sister, while Mac and his younger brother were left with his father. At the time Mac was just beginning high school, his father died, leaving the two boys on their own. Mac, who had learned a little about the roofing business from his father, went to work roofing houses after school before he was old enough for licensure; at night and on weekends Mac worked to support himself and his younger brother. Before he was eighteen, Mac quit school and began working full-time as a roofer, in construction, and on farms. Soon, with one old truck and some part-time help, Mac started his roofing business. Mac grew up in tough times in a tough place doing a tough job. Sometimes, he drank, fought, and drove too fast, but he always worked hard to make his business grow.

For the last twenty years, Mac has been married, raising his children, and working hard to build what is believed to be the largest private employer in Newberry, Florida. As this Court will learn, Mac has been a generous, even soft-hearted man while at the same time a tough competitor and driven businessman. He has done charitable work for so many so often that it is hard to quantify its value.

The Court will learn that Mac could and probably should have laid off employees during the "great recession" (between 2009-2016) but he never did –

not once – even when his bankers told him to do so. Mac could, and some would say should, have filed bankruptcy but he refused to do so because he believed it to be unfair to those who had stood by him during hard times. He made some bad choices – but he is not a bad man. Does a bad man advertise free roofs for local churches for more than twenty years? Does a bad man keep paying employees who are too injured or ill to come to work? Does a bad man let an elderly person live in a demo after losing their home to a fire?

March 25 is the day Mac Johnson faces justice – which is all he seeks or deserves. But that justice should consider Mac's best when adjudicating his worst. Home detention, for as long as this Court deems appropriate, will punish and deter while allowing a valuable concern to keep providing jobs for families throughout the community.

The undersigned is well aware that the purpose of sentencing, as stated in 18 USC 3553(a), is for the Court to impose a sentence "sufficient but not greater than needed to comply with the statutory purpose of sentencing." Gone are the days when the sum total of a Defendant's future is solely limited to the calculations and classifications set forth in sentencing tables and departure prohibitions. The District Courts are now empowered to "vary" from the Guidelines in cases where departures are otherwise proscribed. *United States v. Myers,* 503 F 3d 676, 684 (8th Cir. 2007). Indeed, the sentencing guidelines no longer bind District Courts

but are, rather, persuasive authority. *United States v. Chase,* 560 F 3rd 828 (8th Cir. 2009). See also *United States v. Pugh,* 515 F 3d 1179 (11th Cir. 2008). The purpose of 18 USCA 3553(a) is to allow a court to fashion individual justice in the context of consistency and proportionality. The Court may consider family obligations, extraordinary restitution efforts, entrepreneurial spirit, and the like. This Court can achieve the purposes of the law by varying from a guideline sentence by simply requiring that the purpose of incarceration is replaced by home detention. In this case, a whole community of families will be spared significant economic losses while the government is assured that formal compliance with the law is achieved. This is a case where a second chance has been earned not by what the Defendant has said he will do but by what he has done to prove himself worthy.

**AVERA & SMITH, LLP**

*/s/ Rod Smith*
Rod Smith, Esq.
Florida Bar No.: 0202551
John Whitaker, Esq.
Florida Bar No.: 0196363
2814 SW 13th Street
Gainesville, FL 32608
(352)372-9999/FAX(352)375-2526
Attorney for Defendant
Email:  rodsmith@avera.com;
 rsservice@avera.com;
 jwhitaker@avera.com;
 jwservice@avera.com

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to Assistant United States Attorney Greg McMahon by hand delivery to the United States Attorney's Office as instructed; and via email to Assistant United States Attorney Danielle Durst, Esq. at Danielle.Durst@usdoj.gov; United State Probation Officer, Andrew Swope at Andrew_Swope@flnp.uscourts.gov and Co-Counsel for Defendant, Terry Silverman, Esq. at tsilverman@gainesvillelaw.com on this 21st day of March, 2019.

**AVERA & SMITH, LLP**

*/s/ Rod Smith*
Rod Smith, Esq.
Florida Bar No.: 0202551
John Whitaker, Esq.
Florida Bar No.: 0196363
2814 SW 13th Street
Gainesville, FL 32608
(352)372-9999/FAX(352)375-2526
Attorney for Defendant
Email:  rodsmith@avera.com;
        rsservice@avera.com;
        jwhitaker@avera.com;
        jwservice@avera.com